**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| STEPHEN CALVIN PARRISH | |
| Appellant | No. 1329 MDA 2015 |

Appeal from the Judgment of Sentence entered July 1, 2015
In the Court of Common Pleas of York County
Criminal Division at No: CP-67-CR-0006243-2013

BEFORE:  LAZARUS, STABILE, and DUBOW, JJ.

MEMORANDUM BY STABILE, J.:                **FILED JULY 21, 2016**

Stephen Calvin Parrish ("Appellant") appeals from the judgment of sentence entered by the Court of Common Pleas of York County entered on July 1, 2015, challenging the denial of his motion to suppress evidence obtained following a traffic stop.  For the reasons set forth below, we affirm.

In the early morning hours of June 25, 2013, Officer Michael Carpenter of the Wrightsville Police Department was on patrol in the 800 block of Hellam Street in Wrightsville Borough.[1]  Trial Court Opinion, 10/5/15, at 1. Having been an officer with the Wrightsville Police Department for seven years, Officer Carpenter was familiar with Hellam Street and knew the speed limit to be thirty-five miles per hour.  N.T., Suppression Hearing, 7/1/15, at

_____

[1] It is also worth noting that Officer Carpenter was in a marked police cruiser and in full uniform while on patrol on the morning of June 25, 2013.

17-18. While parked along Hellam Street at 1:48 a.m., Carpenter observed a white Honda Accord traveling eastbound at a "high rate of speed." Trial Court Opinion, 10/5/15, at 1. Utilizing his experience as a police officer and his observation of the Accord, Carpenter estimated the vehicle's speed to be about sixty-five miles per hour. N.T. Suppression Hearing, 7/1/15, at 19. At no point did Carpenter use a PennDOT approved speed timing device to verify this appraisal. *Id.* at 21.

Officer Carpenter initiated a traffic stop, requiring first that he accelerate past thirty-five miles per hour to reach the Accord. N.T., Suppression Hearing, 7/1/15, at 18, 22. Upon stopping the vehicle, Officer Carpenter identified the driver as the Appellant. Trial Court Opinion, 10/5/15, at 2. While speaking with Appellant, Officer Carpenter noticed a "strong odor of alcohol" emanating from the vehicle and that Appellant's eyes were "glassy." *Id.* During the stop, Appellant admitted to having had "a couple of beers" prior to driving. Affidavit of Probable Cause, 7/16/13. Officer Carpenter then administered field sobriety tests,[2] on which Appellant performed poorly. N.T., Suppression Hearing, 7/1/15, at 19-20. A preliminary breath test indicated that Appellant had a blood alcohol content

_____

[2] The tests consisted of the Horizontal Gaze Nystagmus (HGN) and the walk and turn. N.T., Suppression Hearing, 7/1/15, at 19-20.

("BAC") of .120.[3] Trial Court Opinion, 10/5/15, at 2. At the conclusion of the stop, Officer Carpenter charged Appellant with DUI – general impairment,[4] DUI – high rate of alcohol,[5] and Obedience to Traffic-Control Devices.[6]

Appellant subsequently filed a motion to suppress the evidence of his BAC obtained because of the June 2013 traffic stop. After a brief hearing, the trial court denied the motion. The court then held a bench trial wherein it found the Appellant guilty of the DUI related offenses only. N.T., Suppression Hearing, 7/1/15, at 23-26.

Appellant timely appealed the decision not to suppress the BAC evidence. Notably, Appellant does not challenge the trial court's factual findings; rather, he merely contests the court's legal conclusions drawn therefrom. Appellant's Brief at 6. On appeal, Appellant argues that a police officer must use one of the speed timing methods enumerated in 75 Pa.C.S.A. § 3368 to establish sufficient probable cause to initiate a traffic stop for speeding. We disagree.

_____

[3] A subsequent blood test revealed a BAC of .132. Trial Court Opinion, 10/5/15, at 2.

[4] 75 Pa.C.S.A. § 3802(a)(1).

[5] 75 Pa.C.S.A. § 3802(b).

[6] 75 Pa.C.S.A. § 3111(a).

Our standard and scope of review for an order denying a motion to suppress is well established:

> We are limited to determining whether the lower court's factual findings are supported by the record and whether the legal conclusions drawn therefrom are correct. We may consider the evidence of the witnesses offered by the Commonwealth, as verdict winner, and only so much of the evidence presented by [the] defense that is not contradicted when examined in the context of the record as a whole.

*Commonwealth v. Feczko*, 10 A.3d 1285, 1287 (Pa. Super. 2010) (quoting *Commonwealth v. Hughes*, 908 A.2d 924, 927 (Pa. Super. 2006)). However, when an appellant maintains that the suppression court committed a legal error, "[t]he suppression court's conclusions of law . . . are not binding on an appellate court." *Commonwealth v. Nester*, 709 A.2d 879, 881 (Pa. 1998). We are also mindful that, in our review of the trial court's decision, we may look no further than the record produced at the suppression hearing;[7] evidence presented at another time is irrelevant. *See In re L.J.*, 79 A.3d 1073 (Pa. 2013) (holding that appellate courts may not consider evidence adduced at trial when evaluating the propriety of suppression decisions).

_____

[7] In this case, both the Commonwealth and Appellant stipulated that the record for purposes of the suppression hearing would consist of the criminal complaint, the affidavit of probable cause, and the testimony offered by Officer Carpenter at the hearing. N.T., Suppression Hearing, 7/1/15, at 15-16, 23.

In Pennsylvania, the legislature has prescribed the amount of cause needed for a traffic stop.[8]  This Court has clarified the statutory standard as follows:

> [T]he standards concerning the quantum of cause necessary for an officer to stop a vehicle in this Commonwealth are settled; notwithstanding any prior diversity on the issue among panels of this Court.  Traffic stops based on reasonable suspicion: either of criminal activity or a violation of the Motor Vehicle Code under the authority of Section 6308(b) must serve a stated investigatory purpose.

*Feczko*, 10 A.3d 1290-1291 (footnote and citation omitted).  We further noted in *Feczko* that reasonable suspicion, without more, is insufficient to stop a vehicle "when the driver's detention cannot serve an investigatory purpose relevant to the suspected violation."  *Id.*  "In such an instance, it is [incumbent] upon the officer to articulate specific facts possessed by him, at the time of the questioned stop, *which would provide probable cause to believe that the vehicle or the driver was in violation of some provision of the Code*."  *Id.* (emphasis in original) (internal quotation marks and citation omitted).  In this case, neither the Commonwealth nor Appellant dispute the fact that Officer Carpenter needed probable cause to stop Appellant on the morning of June 25, 2013.  *See, e.g.*, Appellant's Brief at 6,

---

[8] *See* 75 Pa.C.S.A. § 6308(b).

Commonwealth's Brief at 9. As a result, we need not delve into the fine distinctions of probable cause and reasonable suspicion.[9]

The gravamen of Appellant's argument is that Officer Carpenter could not have had the requisite probable cause because he did not use a PennDOT approved speed timing device to ascertain Appellant's speed. Appellant's Brief at 6, 8. In support of his claim, Appellant proffers our Supreme Court's decision in *Commonwealth v. Whitmyer*, 668 A.2d 1113 (Pa. 1995). However, a careful review of *Whitmyer* reveals that Appellant's reliance on that case is misplaced.

The decision in *Whitmyer* hinged on the outward indicia of a violation of the Motor Vehicle Code, which the court found to be lacking. *See Whitmyer*, 668 A.2d at 1117. While appealing, *Whitmyer* is ultimately distinguishable from the instant case. Whereas the stop in *Whitmyer* was for a failure to drive at a safe speed,[10] Officer Carpenter stopped Appellant for speeding. Although the former violation considers a driver's speed, it nonetheless requires an additional component: an articulable reason why the speed is inappropriate under the conditions observed. Thus, the fatal flaw in *Whitmyer* was the failure to point to specific circumstances that rendered

---

[9] We recently devoted significant time to the differences between the two levels of cause in *Commonwealth v. Salter*, 121 A.3d 987, 993 (Pa. Super. 2015). *See also Commonwealth v. Chase*, 960 A.2d 108, 115 (Pa. 2008).

[10] 75 Pa.C.S.A. § 3361.

Whitmyer's speed unsafe.[11]  *Id.* at 1118.  For instance, there was no indication that the driver's speed was inappropriate due to poor visibility, a wet roadway, or especially heavy traffic.  *Id.* at 1117.  In this case, Carpenter needed only to observe Appellant's excessive speed to believe that a traffic violation had occurred.

To reconcile our holding today with **Whitmyer**, we must also address that case's treatment of Whitmyer's alleged speed.  Implicit in the court's discussion was the fact that traveling at certain speeds can be a hazardous condition.  Yet, to know whether Whitmyer had crossed that threshold, the state trooper would have needed an accurate appraisal of the car's speed.  Then, as now, the legislature premised the existence of such exactitude on following a vehicle for three-tenths of a mile.[12]  By trailing Whitmyer for only two-tenths of a mile, the trooper could not have developed a true assessment of Whitmyer's speed for purposes of determining whether the speed had itself become the dangerous condition.  In other words, the court did not say that the trooper was not entitled to rely on his estimate at all, only that he could not depend on it for the violation of driving at an unsafe

_____

[11] The court noted in its decision that the state trooper's observation that Whitmyer had made an erratic lane change did not "fit within the ambit of prohibited vehicle operation as defined in section 3361." **Whitmyer**, 668 A.2d at 1117.

[12] The Motor Vehicle Code stipulates that "[i]n ascertaining the speed of a vehicle by the use of a speedometer, the speed shall be timed for a distance of not less than three-tenths of a mile." 75 Pa.C.S.A. § 3368(a).

speed. Therefore, we can dispense with any notion that the decision in *Whitmyer* stands for the proposition that police officers may pull a driver over for speeding only if the required probable cause results from using the methods enumerated in § 3368.

Throughout his brief, Appellant conflates probable cause with the standard for a conviction. Writing in the early nineteenth century, Chief Justice Marshall aptly noted that the two concepts are not identical. *Locke v. United States*, 7 Cranch 339, 348 (1813) ("[P]robable cause, according to its usual acceptation, means less than evidence which would justify condemnation.") (internal quotation marks omitted). This Court likewise acknowledged the same distinction in *Commonwealth v. Fisher*, 440 A.2d 570 (Pa. Super. 1982). In *Fisher*, we stated that the statute[13] only specified the requirements for a conviction and was otherwise "silent as to when a motor vehicle may be *stopped* for a speed warning or other cause." *Id.* at 572 (emphasis in original). The same is true in this case. Establishing approved speed timing methods, § 3368 only speaks to the evidence necessary for a conviction. Appellant would have us replace the

---

[13] At issue in *Fisher* were the provisions then located at 75 Pa.C.S.A. § 3368(c)(2), which forbade a conviction for speeding unless the recorded speed was at least six miles per hour above the posted speed limit. The General Assembly later amended the statute; the requirements relied upon by the appellants in *Fisher* are now located at § 3368(c)(4). In the instant case, Appellant premises his arguments upon different portions of § 3368, as amended.

current probabilistic standard required for traffic stops with one hitherto confined to formal adjudicatory proceedings. Adopting such a position would graft an impossible burden into the law: the need to have enough evidence for a conviction *before* pulling a vehicle over.[14]

The question remains whether the trial court properly concluded that Officer Carpenter had probable cause to pull Appellant' over for speeding. Our review of the record convinces us that it did. "Probable cause exists where the facts and circumstances within the knowledge of the officer are based upon reasonably trustworthy information and are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime." **Commonwealth v. Joseph**, 34 A.3d 855, 863 (Pa. Super. 2011) (citing **Commonwealth v. Thompson**, 985 A.2d 928, 931 (Pa. 2009)) (internal quotation marks omitted); **see also Commonwealth v. Galendez**, 27 A.3d 1042, 1046 (Pa. Super. 2011) ("It is the facts and circumstances *within the personal knowledge of the police officer* that frames the determination of the existence of probable cause.") (emphasis in original). Ascertaining the presence or absence of probable cause requires a

---

[14] Appellant's brief suggests the futility of such an obligation when it acknowledges that some "elements required to find guilt would not be established despite clocking a vehicle's speed with an approved method." Appellant's Brief at 9. For instance, an officer could not establish the driver's identity without stopping the vehicle. *Id.* However, if the officer cannot pull the vehicle over without enough evidence for a conviction, how can he or she initiate a stop to ascertain the most important component of a conviction, to wit: the wrongdoer's identity?

totality of the circumstances analysis. ***Id.*** In this case, Officer Carpenter was patrolling a stretch of roadway with which he was well familiar. Carpenter knew the posted speed limit and the usual pace of traffic along Hellam Street. After observing Appellant's vehicle, Carpenter's experience with traffic enforcement enabled him to estimate Appellant's speed as being nearly double the posted speed limit.

Our precedent further indicates that Carpenter's probable cause determination was proper. In ***Commonwealth v. McElroy***, 630 A.2d 35, 40 (Pa. Super. 1993), we concluded that the trial court had properly denied suppression even though the police officer based his appraisal of the defendant's speed on nothing more than observation and experience. Significantly, we again stated that the inadequacy of the officer's testimony to secure a conviction was of no moment to the issue of probable cause. ***Id.*** ("[T]he question is not whether [the officer's] testimony could sustain a conviction, but rather whether his testimony amounts to reasonable and articulable grounds to suspect a violation of the Vehicle Code."). Nothing in § 3368 mandates that police officers ignore their training, experience, or common sense. We have likewise refused to impose such a constraint.

Our decision today does not open the door to the arbitrary policing envisioned by Appellant. ***See*** Appellant's Brief at 9-10. Although the opportunities for police officers to make mistakes will continue to exist, no pronouncement by this Court could ever eliminate those chances. Indeed, the law tolerates a certain degree of imprecision. ***See***, ***e.g.***,

- 10 -

***Commonwealth v. Angel***, 946 A.2d 115, 118 (Pa. Super. 2008) ("[P]robable cause does not involve certainties, but rather the factual and practical considerations of everyday life on which reasonable and prudent [persons] act."); ***Chase***, 960 A.2d at 115 (stating that even stops based on "factual mistakes" can be constitutional). Nevertheless, police officers will still need to comport with statutory and constitutional requirements before initiating a traffic stop. Just as importantly, the courts will continue to stand ready to vindicate individuals' rights if, and when, officers fail to do so. However, there is no specter of such a violation here.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/21/2016

- 11 -